IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUNIOR COX,** : | CIVIL ACTION NO. 1:07-CV-0534 |
| Petitioner : | (Judge Conner) |
| v. : | |
| **DONALD MONICA, et al.,** : | |
| Respondents : | |

## **MEMORANDUM**

Petitioner Junior Cox, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed this petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 arguing that he is being unlawfully detained pursuant to the mandatory detention provision found at § 236(c)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c)(1)(B), a statute that does not apply to him. Alternatively, he argues that the statute violates the substantive and due process provisions of the Fifth Amendment of the United States Constitution. For the reasons that follow, because the court concludes that the mandatory detention provision does not apply to petitioner, the petition will be granted and the matter will be remanded to ICE to conduct an individualized bond hearing. Petitioner's arguments concerning the constitutionality of the mandatory detention statute, as applied to him, will not be reached.

I.     **Statutory Background**

On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Pub.L. 104-28, Div. C., Title III, §

303(b)(3), 110 Stat. 3009-586 (1996) (IIRIRA).  The IIRIRA contained a mandatory detention provision, INA § 236(c), now codified as 8 U.S.C. § 1226(c).  However, implementation was deferred for two years.  During the two-year deferment, the "Transition Period Custody Rules" ("TPCRs"), IIRIRA § 303(b)(3), were to be implemented.  These rules provided for bond hearings for some aliens removable for having committed certain crimes and gave the Immigration Court discretion to set bond if a lawfully admitted alien did not present a danger to persons or property and was likely to appear at future removal proceedings.  See IIRIRA § 303(b)(3).[1]  On October 9, 1998, the TPCRs expired and INA § 236(c), 8 U.S.C. § 1226(c) became effective, providing for the mandatory detention of certain criminal aliens as follows:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who--
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (d) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

---

[1] Section 303(b) of the IIRIRA is not codified but can be found in the historical notes to 8 U.S.C. § 1226.

> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

## II.    **Factual Background**

Petitioner, a native and citizen of Barbados, entered the United States at San Juan, Puerto Rico on or about March 27, 1990. (Doc. 9-2, p. 4). Since his entry, petitioner has been arrested for the commission of a number of crimes. (Doc. 9-2, pp. 7-9).

On February 6, 2007, ICE took him into custody pursuant to a Notice to Appear (NTA) which charged him as being subject to removal pursuant to section 237(a)(2)(B)(I), violation of the Controlled Substances Act, section 237(a)(2)(C),

firearms violation, and section 237(a)(2)(A)(I), crime involving moral turpitude. The underlying convictions subjecting petitioner to removal are as follows: a 1995 Commonwealth of Pennsylvania Court of Common Pleas of Philadelphia County simple assault conviction involving a police officer; a 1996 possession of cocaine conviction in the New Jersey Superior Court; and a 1999 Commonwealth of Pennsylvania Court of Common Pleas of Philadelphia County firearms violations conviction. (Doc. 9-2, pp. 1-5). Each conviction resulted in "non-confinement (probationary) sentences." (Doc. 1, p. 5, ¶ 12).

Petitioner was advised by ICE that he was being detained pursuant to the mandatory detention provision found at § 236(c)(1)(B) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1226(c)(1)(B). The application of this provision was based on his most recent arrest, even though the arrest was not included in the NTA as conduct subjecting him to removal.[2] (Doc. 10-2, pp. 1-5). Because his most recent arrest was not included in the NTA as conduct subjecting him to removal, and the provision became effective only after the TPCRs expired on October 9, 1998, and he was released on bail in January 1998, for the removable conduct, petitioner requested an individualized bond hearing. On February 20, 2007, he appeared before the Immigration Judge ("IJ") for a "custody re-determination hearing." (Doc. 1, p. 5, ¶ 13). The IJ denied petitioner's request for a bond hearing and issued a decision finding that he was subject to mandatory

---

[2] His most recent arrest, which occurred in 2006 in the City of Philadelphia, resulted in release on bail and the eventual dismissal of the charges.

detention because he had been arrested and released on bail by the City of Philadelphia police in November 2006. According to petitioner, the IJ took the position that "'any arrest' subsequent to the expiration of the TPCR would subject the non-citizen to mandatory detention, even if, as in [petitioner's] case, the post TPCR arrest/release was not related to the underlying offense of removability." (Doc. 1, p. 6, ¶ 13; Doc. 9-2, p. 11). Petitioner's timely motion to reconsider was denied on March 15, 2007. No appeal to the Board of Immigration Appeals (BIA) was filed based on petitioner's counsel's review of several unpublished opinions that indicated that the BIA would deny relief. (Doc. 1, p. 5, ¶ 9). Rather, petitioner sought relief in this court.

### III.   Discussion

#### A.   Exhaustion of Administrative Remedies

Respondents first contend that the petition should be dismissed for failure to exhaust administrative remedies based on petitioner's refusal to appeal the denial of a bond hearing to the BIA. Petitioner responds that such an appeal would be futile in this situation because the BIA has issued several unpublished opinions that indicate that the appeal would be denied because the issue has already been determined. (Doc. 10, p. 2, citing In re Garcia-Ramirez, 2004 WL 2952340 (BIA 2004), In re Younes (no citation provided), In re Edwards (no citation provided)).

Under the immigration laws, exhaustion of administrative remedies is statutorily required only on appeals of final orders of removal. 8 U.S.C. § 1252(d)(1). Exhaustion is not required when a petitioner challenges decisions concerning bond,

as is the case here. Rowe v. Immigration & Naturalization Serv., No. Civ. A. 98-11511-GAO, 1999 WL 289362, at *2 (D. Mass. Apr. 30, 1999); Pastor-Camarena v. Smith, 977 F. Supp. 1415, 1417 (W.D. Wash. 1997) (finding no exhaustion requirement in a pre-deportation challenge to bond denial); Montero v. Cobb, 937 F. Supp. 88, 91 (D. Mass. 1996) (stating that there is no federal statute that imposes an exhaustion requirement on aliens taken into custody pending their removal).

However, even if the court were to conclude that exhaustion was required, in light of the fact that exhaustion of administrative remedies is considered futile where the administrative body has predetermined the issue before it, see McCarthy v. Madigan, 503 U.S. 140, 148 (1992), and all indications are that the BIA has done just that, the court would opt to excuse exhaustion and consider the matter.

### B.    Applicable Detention Provision

Essentially, petitioner argues that mandatory detention provision of § 236(c) should not be retroactively applied to him because he was released from criminal custody on the conduct subjecting him to removal in January 1998, before the effective date of § 236(c). It is his position that his detention is governed by the TCPR rules.

Respondents argue that Congress intended for the mandatory detention provision to apply to any custodial situation that presents itself after the effective date of § 236(c). Therefore, petitioner's 2006 arrest subjects him to mandatory detention. "In addition, the plain language of § 236(c) does not require that the alien be charged as removable with or found removable on the particular ground on

which mandatory detention is based.  Further, there is nothing in the legislative history showing any intent to require that the charges forming the basis for mandatory detention also form the basis of the underlying removal proceedings." (Doc. 9, p. 10).

The Supreme Court has set forth the basic framework for addressing whether a statute has retroactive application:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach.  If Congress has done so, of course, there is no need to resort to judicial default rules.  When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.  If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994).  With regard to the retroactivity of the mandatory detention provision, exhaustive legal research reveals that neither the United States Court of Appeals for the Third Circuit, nor any other circuit court, has addressed the circumstance in which petitioner finds himself.  However, some guidance has been found in reviewing various district court cases.  The United States District Court for the District of New Jersey, in concluding that the provision had prospective application only, stated the following:

> Congress has expressly provided that 8 U.S.C. § 1226(c) is to be applied only prospectively to aliens who were released from criminal custody after the statute took effect.  See

> Mathews v. Kidder, Peabody & Co., Inc., 161 F.3d 156, 160-61 (3d Cir. 1998) (noting that, under Landgraf [v. U.S. Film Prod., 511 U.S. 244 (1994)], if Congress has expressly provided that the statute is or is not to be applied retroactively, the court must follow that express prescription, apply the statute accordingly, and the inquiry is done). Congress has explicitly set forth the effective date of the new detention provisions of the IIRIRA. See Pub.L. 104-208, Div. C, Title III, § 303(b), Sept. 30, 1996, 110 Stat. 3009-586. In that provision, as noted above, Congress provided that implementation of the mandatory detention provision contained in 8 U.S.C. § 1226(c) could be delayed for up to two years upon the request of the Attorney General. See IIRIRA § 303(b)(2). Congress then provided that "[a]fter the end of such 1-year or 2-year periods, the provisions of [8 U.S.C. § 1226(c) ] *shall apply to individuals released after such periods*." Id. (emphasis added). IIRIRA § 303(b)(2) clearly sets forth the express command of Congress that the permanent mandatory detention provisions are to be applied to aliens who were released after the transitional rules expired.

Velasquez v. Reno, 37 F. Supp. 2d 663, 670-71 (D. N.J. 1999).[3] Other district courts have similarly held that 8 U.S.C. § 1226(c) does not apply to aliens who were released from custody prior to its effective date. See Alves-Curras v. Fasano, No. 98-cv-2295 (S.D.Cal. Feb. 22, 1999); Alwaday v. Beebe, No. CV 98-1581PA, 1999 WL 184028, 43 F. Supp. 2d 1130 (D. Or. January 29, 1999). "Both Alves-Curras and Alwaday held that based upon the plain language of the statute, as well as IIRIRA § 303(b)(2) which states that 8 U.S.C. § 1226(c) applies to individuals released after the two year transitional period, 8 U.S.C. § 1226(c) does not apply to aliens who were

---

[3]Exhaustive legal research reveals that the neither the United States Court of Appeals for the Third Circuit, nor any other circuit court, has addressed the precise issue presented by petitioner. However, some guidance has been found in reviewing various district court cases around the country.

released in 1992 and 1991, respectively. See Alves-Curras, slip op. at 4; Alwaday, slip op. at 8." Velasquez, 37 F. Supp. 2d at 671-72. Other courts, relying on the "when the alien is released" language have also concluded that the provision does not have retroactive application. See Bromfield v. Clark, No. C06-757RSM, 2007 WL 526511 at *4 (W.D. Wash. Feb. 17, 2007); Quezada-Bucio v. Ridge, 317 F. Supp. 2d 1221, (W.D. Wash. 2004) (finding that petitioner who was released from state custody and was not taken into immigration custody until three years later was not subject to mandatory detention under INA § 236(c)); Pastor-Camarena, 977 F. Supp. at 1415 (holding that the plain meaning of the statute indicates that INA § 236(c) applies to aliens immediately after release from custody, and not to aliens released many years earlier); see also Boonkue v. Ridge, 2004 WL 1146525 (D.Or. May 7, 2004); Alikhani v. Fasano, 70 F. Supp. 2d 1124 (S.D. Cal. 1999).

Based on the above, the court concludes that the statutory provision does not retroactively apply to aliens who were released from custody prior to its effective date because the provision clearly attaches new legal consequences to actions taken before its enactment. See Pena-Rosario v. Reno, 83 F. Supp. 2d 349, 362. Consequently, petitioner is not subject to mandatory detention and is entitled to an individualized bond hearing.

Petitioner's 2006 arrest does not alter this conclusion as this court is persuaded by the cases that find that the date of release from the offense for which the individual is found removable determines whether the individual is entitled to an individualized bond hearing or the mandatory detention provision.  See

Alikhani, 70 F. Supp. 2d at 1132 (finding that offense for which he was found deportable determined whether individual was entitled to a bond hearing or subject to mandatory detention); Grant v. Zemski, 54 F. Supp. 2d 437, 442 ((E.D.Pa. 1999) (rejecting argument that Congress intended for the mandatory detention provision to apply regardless of when individual was convicted or released from criminal custody and finding that mandatory detention provision of IIRIRA did not apply to alien released from criminal custody prior to IIRIRA's effective date); Velasquez, 37 F. Supp. 2d 663 (mandatory detention statute does not apply to alien who was released thirteen years before effective date of statute and was taken into immigration custody and placed in removal proceedings after the effective date of statute).

Further guidance is found in the case law considering whether the IIRIRA retroactively eliminated 212(c) discretionary relief.[4] "'Several courts have concluded that 'the operative event for determining whether . . . IIRIRA amendments should apply is the actual commission of the crime for which the petitioners now face deportation.'" Santos-Gonzalez v. Reno, 93 F. Supp. 2d 286,

---

[4]Section 212(c) of the Immigration and Nationality Act permitted the Attorney General to waive exclusion of entry into the United States for aliens who had traveled abroad and were seeking entry back into the country, but who would otherwise be excludable based on their criminal convictions, upon a showing of extraordinary hardship to the deportee or his family, or other exceptional circumstances. See former 8 U.S.C. § 1182(c) (1990).

295 (E.D. N.Y. 2000) (quoting Dunbar v. INS, 64 F. Supp. 2d 47, 54 (D. Conn. 1999)); see also Maria v. McElroy, 68 F. Supp. 2d 206 (E.D. N.Y. 1999).

It is undisputed that petitioner's latest release date for conduct that was included in the NTA was in January 1998, prior to the expiration of the TCPRs and before the effective date of § 236(c). It is further undisputed that the 2006 arrest was not included in the NTA and has absolutely no bearing on the removal proceedings. ICE's decision not to commence removal proceedings until more than nine years after petitioner's release from the conviction that formed the basis of the removable conduct is of no concern to this court. However, ICE's attempt to reap the benefits of section 236(c) by applying the mandatory detention provision to aliens such as petitioner is overreaching and inconsistent with the scheme established by Congress.

## IV. Conclusion

For the foregoing reasons, the petition for writ of habeas corpus will be granted and the matter will be remanded to ICE.

An appropriate order will issue.

          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge

Dated:      June 20, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUNIOR COX,** | : | **CIVIL ACTION NO. 1:07-CV-0534** |
| **Petitioner** | : | (Judge Conner) |
| v. | : | |
| **DONALD MONICA, et al.,** | : | |
| **Respondents** | : | |

## **ORDER**

AND NOW, this 20th day of June, 2007, upon consideration of the petition for writ of habeas corpus (Doc. 1), it is hereby ORDERED that:

1. The petition is GRANTED.

2. The matter is hereby REMANDED to the United States Immigration and Customs Enforcement ("ICE") ICE for an Immigration Judge to conduct an individualized bond hearing within fifteen days of the date of this order.

3. Respondents shall notify the court of the status of the matter within twenty days.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge